IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ZANOBIA TELETHA JONES,

    PLAINTIFF,

VS.                                                                  Civ. Act. No. 1:23-cv-433

QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.,

    DEFENDANT.                                     JURY TRIAL DEMANDED

COMPLAINT

## I. JURISDICTION

1. This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202 and 42 U.S.C. § 1981. This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

## II. PARTIES

2. Plaintiff, Zanobia Teletha Jones, (hereinafter "Plaintiff") is a resident of Brewton, Escambia County, Alabama, and performed work for the Defendant in the counties composing the Southern District of Alabama during the events of this

case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Southern District, Southern Division.

3. Defendant Quest Diagnostics Clinical Laboratories, Inc. (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. §§ 1331, 1343. Therefore, this Court has personal jurisdiction over Defendant.

### III. STATEMENT OF FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

5. Plaintiff is Black.

6. Defendant hired Plaintiff on or about February 28, 2022.

7. Defendant contracts with hospitals to manage their lab's medical supplies.

8. Since at least February 28, 2022, Defendant has been contracted with Atmore Community Hospital (hereinafter "the Hospital").

9. Defendant employed Plaintiff as an Associate Supply Replenisher (hereinafter "ASR").

10. As an ASR, Defendant assigned Plaintiff the responsibilities of regularly performing inventory in the Hospital's medical lab (hereinafter "the Lab"), monitoring supply usage throughout the day, and ordering supplies as needed.

11. During April 2022, the Hospital hired Megan Demarco.

12. Demarco is White.

13. The Hospital placed Demarco in the position of Lab Manager.

14. Throughout Plaintiff's employment, Demarco was very hostile and critical towards Plaintiff and other Black employees of the Hospital.

15. Shortly after being hired, Demarco instructed Plaintiff, on a regular basis, to order supplies that were outside of the Hospital's authorized amount and well beyond the Hospital's typical usage.

16. Additionally, Demarco frequently took supplies from the Lab and sent them to facilities not contracted with Defendant.

17. Defendant orders and pays for all supplies for the Hospital.

18. The Hospital reimburses Defendant for supplies once the lab has documented that a test was performed.

19. If an item is ordered and expires before use, Defendant is not reimbursed for that item.

20. If an item is removed from the Lab, without being documented with a patient's test, it is not recognized as being used for billing purposes.

21. Because of Defendant's reimbursement and billing procedures, ordering supplies outside of the Hospital's expected use would cause Defendant to lose a substantial amount of revenue.

22. Because of Defendant's reimbursement and billing procedures, sending items to a non-contracted facility would cause Defendant to lose a substantial amount of revenue.

23. Plaintiff repeatedly explained to Demarco that Defendant did not allow her to order supplies beyond the Hospital's expected use.

24. Plaintiff also informed Demarco that she could not remove supplies from the Hospital.

25. Defendant employs Asia Hill,

26. Defendant placed Hill in the position of Lean Supply Supervisor (hereinafter "LLS").

27. Hill was Plaintiff's direct supervisor.

28. As an LLS, Hill's duties consisted of hiring, training, and managing ASR's across multiple facilities, as well as handling disputes between ASR's and contracted hospitals Lab Managers.

29. Defendant employs Linette Santos.

30. Defendant placed Santos in the position of Lean Supply Specialist (hereinafter "LSS").

31. As an LSS, Santos was responsible for providing training and guidance on Defendant's ordering and billing procedures.

32. Defendant authorized Plaintiff to gain authority for excess orders from Hill and Santos.

33. On multiple occasions, Plaintiff spoke with Hill and Santos regarding Demarco's requests.

34. Hill and Santos directed Plaintiff not to order the requested supplies.

35. Hill and Santos repeatedly assured Plaintiff that she was properly performing her job.

36. After Plaintiff, Hill, and Santos denied Demarco's requests, Demarco began making false reports about Plaintiff to Defendant.

37. Demarco alleged that Plaintiff had caused the Hospital to shut down on numerous occasions by altering supply orders.

38. Demarco's retaliation was not limited to false reports; on multiple occasions Demarco yelled at Plaintiff, threw things at Plaintiff, and/or snatched things from Plaintiff.

39. Plaintiff attempted to address Demarco's racially motivated and retaliatory hostile actions through the Hospital's complaint procedures.

40. The Hospital directed Plaintiff to report Demarco's behavior to Defendant because Plaintiff was not an employee of the Hospital.

41. Defendant employs Jane Dulin.

42. Defendant placed Dulin in the position of Southeast Region Manager.

43. Dulin is White.

44. During late October or early November 2022, Plaintiff began reaching out to Dulin.

45. Plaintiff explained to Dulin the discrimination and retaliation that Demarco had been inflicting upon her.

46. Plaintiff notified Dulin that the Hospital had directed Plaintiff to report the hostile work environment that Demarco had created to Defendant.

47. Plaintiff notified Dulin that due to Demarco's physically threatening behavior she did not feel safe working with Demarco.

48. Plaintiff requested that Defendant take action against Demarco or allow Plaintiff to transfer to a different lab.

49. In the past, Defendant has allowed ASR's to transfer labs with the assistance of their Regional Manager for various reasons, including conflicts with lab staff and relocation requests for personal reasons.

50. Dulin refused to allow Plaintiff to transfer locations.

51. In the past, Dulin has helped White employees transfer locations for various reasons, including conflicts with lab staff and personal relocation requests.

52. Dulin refused to speak with the Hospital Human Resources Department about Demarco's behavior.

53. In early November 2022, Plaintiff contacted Defendant's Human Resources Department and informed a Representative that she was in a hostile work environment at her contracted Hospital, that she felt unsafe with the lab manager, and that Dulin had failed to take any action.

54. Defendant's Human Resources Department directed Plaintiff to "stay away" from Demarco.

55. On or about November 9, 2022, Defendant came to the Hospital and investigated Demarco's claims.

56. Defendant interviewed each lab employee and reviewed the lab's history of supply use.

57. Defendant found that Demarco's reports were false.

58. Defendant found that during Plaintiff's employment the lab had never shut down due to lack of supplies.

59. Defendant found that Plaintiff had performed her job as intended.

60. On or about November 10, 2022, Demarco requested a one-on-one meeting with Plaintiff via e-mail.

61. Plaintiff forwarded the email to Hill, who escalated Demarco's request to Dulin.

62. Dulin later called Plaintiff regarding Demarco's request and urged Plaintiff to meet with Demarco.

63. Plaintiff informed Dulin that based on the history of harassment and hostility from Demarco, Plaintiff did not feel comfortable meeting with Demarco in a one-on-one setting.

64. Dulin did not suggest any alternative solutions.

65. Plaintiff then contacted Defendant's Human Resources Department.

66. Defendant's Human Resources Representative directed Plaintiff not to meet Demarco.

67. Following Defendant's investigation, one of the Hospital's employees stopped Plaintiff and warned Plaintiff that since the investigation had concluded she had overheard the Hospital's staff, including Demarco, state that Plaintiff had two-weeks before "something" happens.

68. On or about November 11, 2022, Dulin informed Plaintiff that Plaintiff had two or three days to decide to meet with Demarco or not.

69. After speaking with Dulin, Plaintiff reached out again to Defendant's Human Resources Department.

70. Plaintiff informed Defendant's Human Resources Representative that as a result of Demarco's ongoing harassment Plaintiff had developed severe anxiety and did not feel comfortable meeting with Demarco in a one-on-one setting.

71. Plaintiff also explained that Dulin pushed Plaintiff to meet Demarco despite knowledge of Demarco's actions and Defendant's prior instruction for Plaintiff to stay away from Demarco.

72. Plaintiff told Defendant's Human Resources Representative that she had just recently been informed by an employee of the Hospital she had "two weeks before something happens."

73. Plaintiff told Defendant's Human Resources Representative that Dulin's "two or three day" deadline made Plaintiff believe that she was at risk of being terminated.

74. Defendant's Human Resources Representative assured Plaintiff that she was not at risk of being terminated.

75. Defendant's Human Resources Representative assured Plaintiff that she did not need to meet with Demarco alone.

76. Defendant's Human Resources Representative informed Plaintiff that they were going to speak with Plaintiff's supervisor and let her know Defendant's official decision on the meeting.

77. Defendant's Human's Resources Representative did not contact Hill.

78. Defendant's Human Resources Representative contacted Dulin.

79. Plaintiff contacted Hill and relayed Defendant's Human Resources' instructions.

80. Hill agreed to arrange a meeting between herself, Plaintiff, and Demarco to resolve any underlying issues.

81. Hill contacted Plaintiff and Demarco to establish an appointment to meet and discuss Plaintiff's on-going issues and create a path forward.

82. Demarco repeatedly delayed establishing a meeting with Hill and Plaintiff.

83. On or about December 8, 2022, Dulin instructed Hill to terminate Plaintiff's employment.

84. Hill terminated Plaintiff's employment on December 9, 2022.

85. Demarco failed to meet with Plaintiff and Hill prior to Plaintiff's termination.

86. Prior to December 9, 2022, Defendant had never issued Plaintiff a negative performance review.

87. Prior to December 9, 2022, Defendant had never issued Plaintiff a disciplinary action.

88. Upon information and belief, Hill asked Dulin what the basis for terminating Plaintiff was in light of her spotless employment record.

89. Upon information and belief, Dulin informed Hill simply that the Hospital had control over its property.

90. Hill informed Plaintiff that Defendant terminated Plaintiff's employment because the Hospital was cancelling its contract with Defendant.

91. Defendant frequently gains and loses contracts with hospitals for various reasons.

92. Typically, when a contracted hospital terminates a contract with Defendant, Defendant offers the ASR reassignment.

93. Dulin did not offer to reassign Plaintiff.

94. Upon information and belief, Dulin terminated Plaintiff's employment and did not offer Plaintiff reassignment due to Plaintiff's complaints that she had improperly handled Plaintiff's racially hostile work environment.

95. Upon history and belief, Dulin has a history of providing harsher treatment and fewer opportunities to her Black subordinates.

96. Upon history and belief, Dulin has a history of seeking termination of employees who lodge complaints against her to Human Resources, such as Wanda (LNU).

97. Defendant informed the Alabama Unemployment Department that Plaintiff had been "laid off due to lack of work."

98. After terminating Plaintiff's employment, Defendant posted a job listing for Plaintiff's position at the Hospital.

99. Defendant replaced Plaintiff with a White employee.

## IV. COUNT ONE – Race Discrimination – 42 U.S.C. § 1981

100. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 99 above.

101. Plaintiff is Black.

102. In violation of 42 U.S.C. § 1981, Defendant terminated Plaintiff's employment due to a "lack of work" and subsequently replaced Plaintiff with a White employee.

103. As a result of Defendant's violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## V. COUNT TWO – Retaliation – 42 U.S.C. § 1981

104. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 99 above.

105. During mid-November 2022, Plaintiff reported that Dulin had failed to properly respond to her complaints of illegal racial discrimination.

106. On or about December 8, 2022, Dulin instructed Hill to terminate Plaintiff's employment.

107. In violation of 42 U.S.C. § 1981, after Plaintiff reported Dulin's failure to properly respond to Plaintiff's complaints of race discrimination, Defendant terminated Plaintiff's employment due to a "lack of work" and subsequently replaced Plaintiff with a White employee.

108. As a result of Defendant's violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the 42 U.S.C. § 1981;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

C. Award her back pay, together with employment benefits, front pay, liquidated damages; special damages; nominal damages;

D. Attorneys' fees and costs;

E. Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. §1981 and §1981a; and,

F. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
Allen D. Arnold

_____
Whitney Morgan Brown

**OF COUNSEL**:
ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Mountain Brook, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

**DEFENDANT'S ADDRESS:**
Quest Diagnostics Clinical
Laboratories, Inc.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104